## McShea's Estate

The facts appear from the opinion of

Gest, J., presiding judge.—Walter Ross McShea died on December 3, 1930, leaving a will dated May 10, 1922, in which he described himself as of Atlantic City, N. J. He appointed his parents, Stewart R. McShea and Mary J. Davis McShea, and Edwin Channing Nevin executors of his will. On December 19, 1930, Mary J. McShea and Edwin C. Nevin as surviving executors, Stewart R. McShea having died, presented their petition to the register of wills, setting forth that Walter Ross McShea was a citizen of the United States and a resident of Philadelphia County, State of Pennsylvania, and died at 3348 North Fifteenth Street, Philadelphia, on December 3, 1930. Letters testamentary were issued to them on December 19, 1930. Subsequently, Mary J. McShea or Mary J. D. McShea died, leaving a will of which Rosina C. Smith and Frederick R.

Gillinder are executors, Edwin C. Nevin thus becoming surviving executor of the will of Walter Ross McShea.

The will of Walter Ross McShea, so far as its provisions are here relevant, bequeathed to his wife, Laura, an annuity of $12,000 per annum, and to Laura F. Farrell, an aunt, an annuity of $3,600 per annum, and his residuary estate he devised and bequeathed to his parents, Stewart R. and Mary J. Davis McShea, or the survivor of them, and said Stewart R. McShea predeceased him in 1922.

On May 16, 1933, the register of wills appointed Harry A. Connor as appraiser to assess the estate for transfer inheritance tax, and on May 16, 1933, the said appraiser appraised the estate in the sum of $1,413,585.59, and assessed the tax in the sum of $53,990.04. On June 1, 1933, the present appellants took this appeal from the said appraisement and assessment, stating that "this appeal is being taken for the purpose of having a judicial declaration of the domicile of the decedent, in consequence of the claim by the taxing authorities of the State of New Jersey that the domicile of the testator, at the time of his death, was in that State, and the rights of the appellants were being jeopardized by the inheritance tax claims of the States of Pennsylvania and New Jersey, which might result in double taxation." It appears from the petition filed by the appellants in this case that they were notified, on January 15, 1931, by John McCutchen, Comptroller of the Treasury of the State of New Jersey, and William D. Kelly, State Supervisor of Transfer Inheritance Tax Bureau of the State of New Jersey, that their investigation indicated the decedent was legally domiciled in Atlantic County, N. J.; and, on July 5, 1933, upon presentation of said petition, a citation issued to the register of wills and to John McCutchen, Comptroller of the Treasury of the State of New Jersey and William D. Kelly, State Supervisor of Transfer Inheritance Tax Bureau of the State of New Jersey, to show cause why the assessment of inheritance tax should not be set aside and nullified, and the petitioners were authorized to make service on said John McCutchen and William D. Kelly personally or by registered mail. Service having been duly made, an answer was filed by the register of wills, averring that the decedent was a resident of and domiciled in the State of Pennsylvania at the time of his death, and a replication was filed thereto. No answer was filed by the taxing authorities of the State of New Jersey above mentioned.

The court having fixed November 15, 1933, for the hearing, and the case having been called, it appeared from the affidavits filed that notice of the time and place of hearing had been given to the said John McCutchen by registered mail on November 10, 1933, and to the said William D. Kelly personally on November 9, 1933. They did not appear at the hearing personally or by counsel, and the hearing proceeded.

I observe preliminarily that if the appeal is sustained on the ground alleged, that the testator was domiciled in New Jersey, it would follow that his will was erroneously probated in Philadelphia, and so it seems to me an appeal should also have been taken from the decree of probate on the same ground and for the same purpose. However, I shall dispose only of the question of the validity of the appraisement and assessment.

The following facts were clearly proved:

Walter Ross McShea was born in Philadelphia in 1874, and in his childhood his parents removed from Philadelphia to Phoenixville or Norristown, Penna. When he was about 12 years of age, his parents moved to 3005 Pacific Avenue, Atlantic City, N. J., where he resided with his parents until May 10, 1922, on which date he married Laura L. Patterson of Philadelphia, in the home of her sister, Mrs. Moyer, at 3346 North Fifteenth Street, Philadelphia. The testator and his wife left immediately after their marriage on their wedding trip

to Europe and returned in September 1922, when they went to 3348 North Fifteenth Street, which was owned by his wife, and they lived there until June 1923. They then went to Atlantic City, N. J., and there occupied premises 3002 Pacific Avenue, which was also owned by Mrs. McShea. Up to the time of his death, it was the constant custom of the testator and his wife to occupy the house at 3348 North Fifteenth Street, Philadelphia, during the winter months from October to June, and the house at 3002 Pacific Avenue, Atlantic City, N. J., during the summer. Both houses were furnished for residential purposes.

The testator, while resident in Atlantic City, studied law in Philadelphia at the University of Pennsylvania and was admitted to the Philadelphia Bar in or about 1896. He then opened his office as an attorney at law in the Stephen Girard Building, which he retained for 8 or 10 years, and he then took offices in the Penfield Building until his death. When he was in Philadelphia before his marriage, he occupied a room at the University Club. He died as above stated on December 3, 1930, at 3348 North Fifteenth Street, and was buried in his family mausoleum in Norristown, Penna.

From the above facts, it appears that the parents of the testator at the time of his birth were domiciled in Pennsylvania and subsequently removed to Atlantic City. As the testator was a minor when his parents went to Atlantic City, it seems clear that his domicile was changed to New Jersey, as in his minority he could not retain his domicile of origin or elect a domicile of choice: Dicey on Domicile, 69, 96; Dicey on Conflict of Laws (4th ed.), 114. If therefore the testator had died in his minority, or had not acquired a different domicile of choice after attaining majority, he should at his death be held to be domiciled in New Jersey. But in the present case it is contended that, upon his marriage in 1922, the testator acquired a domicile of choice in Pennsylvania, which was also his domicile of origin.

The important facts relative to the question will now be considered.

1. The testator in his will executed on the day of his marriage described himself as of Atlantic City, N. J.

2. The testator was appointed in Atlantic City executor of the estates of his father and of Joseph F. Fralinger, and in the legal settlement of their estates he gave his residence as 3002 Pacific Avenue, Atlantic City.

3. In deeds executed November 6, 1928, by which his wife's property at 3002 Pacific Avenue, Atlantic City, was conveyed, he described himself as a resident of Atlantic City, N. J.

Declarations such as these are properly relevant though not conclusive, and were carefully considered by the Supreme Court in Dorrance's Estate, 309 Pa. 151, where the chief justice said, in summing up the authorities (p. 169) : "The general rule, however, is that recitals in deeds and wills are not given particular weight in determining domicile in comparison with the evidence supplied by the daily life of the individual and his acts and conduct." And it should be noted that when he made his will in 1922, the recital that he was "of Atlantic City" was consistent with the facts as they then existed.

4. The testator filed income tax returns for 1924, 1925, 1926, 1928, and 1929, giving his address at 3002 Pacific Avenue, Atlantic City. His return for 1927 appears from the letter of the Deputy Commissioner of Internal Revenue to have been destroyed. This also is properly considered as evidence, but it is likewise not conclusive. This point was also considered in Dorrance's Estate, where the chief justice, at page 166, quoted from Feehan v. Tax Commissioners, 237 Mass. 169: "Every person must have a domicile somewhere and a man cannot elect to make his home in one place for the general purposes of life, and in

another place for the purposes of taxation". The effect of these recitals therefore depends on the general weight of the evidence.

5. The testator voted in the general election at Atlantic City in 1927 and 1928, and the primary election in 1930, giving his residence at 3002 Pacific Avenue, and in the voting record he stated that he was a citizen of New Jersey and resident therein. It appeared that he never voted in Philadelphia, although he was there assessed for voting purposes at 3348 North Fifteenth Street in September 1928 and December 1929. This latter assessment amounts to little, as it was undoubtedly a mere formal act of the assessor. The fact that Mr. McShea voted in Atlantic City and made the above statements to show his qualification as a voter involves some important distinctions: First, the distinction between residence and domicile. Residence is the physical fact of presence in a place or country, which may be long or short, and a man may readily have a number of residences, as is often the case. We all know men who have several houses or homes in different parts of the country, which they occupy at different seasons of the year or according to their whim or for business purposes. Domicile, however, involves more than physical presence in a given place. It involves a condition of the mind, the mental fact of his choice, purpose, or intention to reside permanently in a certain place: Dicey on Domicile, 76; Blessing's Estate, 29 Dist. R. 3. And, secondly, there is the distinction between domicile, strictly so called, and the political rights that follow from citizenship.

Under the Constitution of the United States, art. IV, sec. 2, the citizens of each State are entitled to all privileges and immunities of citizens in the several States, and by the fourteenth amendment, all persons born in the United States are citizens of the United States and of the State in which they reside; the qualification of residence of any State to vote therein may properly be governed by the local law if, however, it is in conformity with the Constitution. Thus, in New Jersey, in order to vote, a resident must be a citizen of the United States, a resident of the State for 1 year, a resident of the County for 5 months, and a resident of the election-district, and 21 years of age: 2 Compiled Statutes Supp. 1925-1930 § 65-2805A. In Pennsylvania, by the Constitution, art. VIII, sec 1, every citizen 21 years of age, being a citizen of the United States for 1 month, a resident of the State for 1 year, and a resident of the election district for 2 months preceding the election, is entitled to vote. The matter is complicated by the loose dicta in the decisions which so often confuse citizenship, residence, and domicile, as may be seen in Fry's Election Case, 71 Pa. 302, a case commented on by Stewart, P. J., in Kurie v. Dodson Day School (no. 2), 9 D. & C. 453, and by Mr. Chief Justice Frazer in Dorrance's Estate, 309 Pa. 151, 165. And in an early New Jersey case, Cadwalader v. Howell et al., 18 N. J. L. 138, a similar confusion is apparent. The distinction between residence and domicile is examined in the recent Pennsylvania cases, such as Hunter v. Bremer, 256 Pa. 257, 266, and Raymond v. Leishman, 243 Pa. 64. To discuss in detail the numerous decisions relative to the meaning of residence and domicile would be impossible, and I shall not attempt it. Although the right to vote might from a technical consideration of the constitutional provisions on the subject seem to be dependent upon citizenship and residence, as distinguished from domicile, yet the great weight of authority seems to hold that the right to vote is determined by the domicile of the voter: Jacobs on Domicile, sec. 53; although this is not a conclusive factor: Jacobs on Domicile, sec. 435. And it does not follow that Mr. McShea, in voting as he did in New Jersey on three occasions, showed a definite intention to adopt New Jersey as his domicile; he may indeed have mistaken his legal and political rights in regard thereto, and the result of the decisions is that the place of voting, while relevant to the question of

226

domicile, is by no means positive proof and when overbalanced by other facts may be of slight importance. See Pettit's Executrix v. City of Lexington et al., 193 Ky. 679, quoted in Dorrance's Estate, at page 166. And it appears from the record in Dorrance's Estate, p. 176, that Dorrance and his wife voted in New Jersey a dozen times from 1920 to 1929, but our Supreme Court evidently considered this fact as of little importance, as Pettit v. Lexington was quoted with approval.

Other material facts tending to show that McShea was domiciled in Pennsylvania are:

1. He became a member of eight clubs or societies in Philadelphia from 1900 to 1927, in all of which he gave his address at his law office or 3348 North Fifteenth Street. In 1916, before his marriage, he became a member of the Colonial Society and gave his residence as at Atlantic City.

2. His automobile licences, from 1922 to 1930, were issued in Pennsylvania with his registration at 3348 North Fifteenth Street.

3. His store accounts in Philadelphia gave his residence, from 1922, as 3348 North Fifteenth Street. See Dorrance's Estate, at page 163.

4. In transferring securities, he always gave his office address in Philadelphia.

5. He kept a bank account in Second National Bank of Atlantic City, amounting at the time of his death to $175,000, and a bank account in Fidelity-Philadelphia Trust Company in Philadelphia amounting to $35,000, and in his safe deposit box in that company were securities amounting to $1,200,000, the bulk of his estate.

6. The testator's father having died soon after the testator's marriage in 1922, his mother in 1925 sold their home at 3005 Pacific Avenue and removed from Atlantic City to Norristown, and there built an extensive family mausoleum.

7. McShea and his wife lived at 3348 North Fifteenth Street for about 9 months in every year, only going to Atlantic City for the summer.

The case is so similar in many respects to Dorrance's Estate, in which the chief justice filed an elaborate opinion, that I am spared the necessity of elaborating the decisions. The decedent appears to have claimed New Jersey as his residence only because he was of the opinion that the taxation there was more lenient than in Pennsylvania, a fact which was one of the chief matters involved in Dorrance's Estate, to which reference has already been made. Dorrance's Estate, indeed, is a stronger case than the present to support the claim of the appellants. Upon the whole, I am of opinion that the legal domicile of the decedent was in Philadelphia and that the will was there properly admitted to probate, and consequently the appeal should be dismissed.

*Frederick R. Gillinder* and *Robert G. Erskine*, for exceptants.

*Robert M. Boyle* and *H. Horace Dawson*, contra.

VAN DUSEN, J., January 26, 1934.—This case is strikingly similar to Dorrance's Estate, 309 Pa. 151. The decedent was born in Pennsylvania, removed as a boy to New Jersey with his parents, became a member of the Philadelphia Bar, married a Philadelphian, and then removed to her house in Philadelphia. Because he preferred to be taxed as a resident of New Jersey, he said and did many things which pointed to a New Jersey residence. He voted and made income tax returns only in New Jersey. On important occasions, such as the renting of a safe deposit box, qualification as executor of New Jersey residents and the filing of accounts as such, and in the conveyance of property, he gave his residence in New Jersey. On other occasions he gave his residence in Penn-

sylvania. He registered his automobile in Pennsylvania, no doubt because that was where he used it.

On the other hand, like Dorrance, he actually lived in Philadelphia, in a house owned by his wife, for 8½ months in each year. He was a member of the Philadelphia Bar and not of the New Jersey Bar, and his office was in Philadelphia. For 3½ months he lived in Atlantic City, N. J., during the summer.

The hearing judge found that decedent was a resident of Pennsylvania. It would appear that, for a purpose, when decedent did those things that are soon over and easily shifted on paper from one place to another, such as voting, making tax returns, and giving addresses, he chose New Jersey. But when it came to eating and sleeping and conducting his business for the greater part of the year, by his acts and the intention to be deduced from his acts he was a resident of Pennsylvania. A man's home is where he makes it, not where he would like to have it: Dorrance's Estate, supra, 175.

The exceptions are dismissed, and the decree of December 14, 1933, of the hearing judge, dismissing the appeal of Edwin C. Nevin, executor of Walter Ross McShea, et al., from the appraisement and assessment of the estate of Walter Ross McShea, and remitting the record to the register of wills, is confirmed absolutely.