## Ewing, Appellant, *v.* Ewing.

Argued April 12, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, RHODES and HIRT, JJ.

Benjamin H. Marks, for appellant.

T. A. Sampson, of Stranahan & Sampson, for appellee.

OPINION BY BALDRIGE, J., June 26, 1940:

The libellant brought this action in divorce against his wife on the ground of desertion. The respondent in her answer avers that the acts, conduct, and demeanor of her husband "forced her to leave him and to live separate and apart from him." In other words, while her leaving the home was voluntary it was not malicious but was justified by libellant's conduct.

The withdrawal by the wife from the common domicile and cessation of marital relations imposed upon her the burden of proof to establish by the preponderance of the evidence facts that would entitle her to a decree of divorce (Rosa v. Rosa, 95 Pa. Superior Ct. 415; Scholz v. Scholz, 113 Pa. Superior Ct. 359, 173 A. 761) or that the separation was by consent.

The master appointed by the court, after hearing the testimony, recommended that the prayer of the libel be granted. The exceptions filed thereto were sustained by the learned court below and the libel was dismissed on the ground that respondent's withdrawal was not malicious and that the conduct of the husband manifested his consent to a separation.

The respondent, when asked why she left the libellant, answered: "He made life unbearable because of his disposition and too excessive intercourse and going out with other women."

The parties were married May 3, 1928. They lived at various places as the libellant, in order to obtain work as a machinist, had to move to different locations. They maintained their marital relations until March 23, 1937, living in the same household with the exception

of comparatively short intervals when he was away working. On that date without warning she left their home in Sharon, taking with her considerable household property and her personal effects.

The evidence disclosed that the libellant is rather a quiet, retiring, taciturn individual not given to conversation, but during the nine years of their married life there is no proof of any important differences. He never used violence, nor did he fail to reasonably maintain her within his means. In one instance he contributed $300 toward buying her a car, which was not denied. She at times was employed and augmented the family income to some extent. She had never previous to her departure, charged him with improper conduct and apparently made few, if any, serious complaints regarding his actions. We fail to find any evidence of record that justifies the charge that his conduct in the home made her life unbearable.

Little need be said as to the charge of excessive intercourse as her own testimony relating thereto is contradictory. Neither the master nor the lower court accepted either of the first two reasons assigned by her as a justification for a withdrawal from the home. She relies principally for her action upon the charge that the libellant was carrying on an affair with another woman.

Her sister-in-law testified that on March 11, 1937, about 10:30 P. M. she saw the libellant in his automobile near the Erie Railroad Station in Sharon occupying the front seat with a woman whom he was embracing and kissing. Her husband corroborated her, to some extent, but he said nothing about the kissing.

Mr. McKay, a member of the Mercer County Bar, testified that in a non-support case he represented the libellant and that Mrs. Holmes the sister-in-law testified to this occurrence in the automobile but from the notes he then made and from his recollection she said nothing about libellant's kissing his female companion.

The libellant denies the automobile incident. He testified that on that evening he and a Mr. Lewis were in Warren, Ohio, and did not return to Sharon until after 11 o'clock, when he went home.

Mr. Lewis, who was apparently a disinterested witness, corroborated him, explaining that the libellant took him to Warren to get some parts that he needed for an automobile. There was evidence that the place where libellant's car was supposed to be was in a prominent and well-lighted location in Sharon.

A few days after the alleged automobile occurrence, Mr. and Mrs. Holmes informed Mrs. Ewing what they had observed, and about ten days thereafter she withdrew from the home, leaving the following note:

"March 23rd, 1937"

"Joe—This is the Result of your Petting Party In Front of the Erie Station on the eve of Mar. 11th. I am sorry this had to happen But it seems you are not satisfied with me. So I will go my way and then you will be free to have a good time with your Sweetheart You can do as you Please with what is left in the house. I don't want it. I cannot live with a man I cannot Trust. I have been as true to you as Steel. I have no Regrets. Good Luck and a Happy Life with your new Wife. Be sure you Pay the Bills, as I didn't.

Your Heart Broken

and

Estranged Wife. Alice."

On April 8, the husband wrote to his wife informing her that he had retained the house and furniture and that if she would show a willingness to stay with him as his wife, he would do his best to continue their former life. That letter was not answered.

Clearly, the wife on the evidence adduced could not have obtained a divorce on the ground of cruel and barbarous treatment. There was no evidence that her life was in any way endangered, and it was insufficient also to establish indignities by such a course of conduct as

to render her condition intolerable and life burdensome. She did not speak to him about the automobile incident. Before making such a serious move she at least should have informed him of her contemplated action and the reason therefor. He might have been able to convince her that she had been misinformed. Her leaving in such circumstances is presumed to be wilful and malicious: *Rosa v. Rosa,* supra.

Nor do we find that she carried the burden of proving by sufficient competent evidence that the separation was by consent as was her duty: *Thomas v. Thomas,* 133 Pa. Superior Ct. 12, 1 A. 2d 686. Mere silence does not establish consent. The respondent having withdrawn from the home it was not incumbent upon the libellant to seek a reconciliation nor to ask the wife to return. To the contrary it is the duty of a deserting wife to seek an appeasement and until this has been done consent to the separation is not established: *Ward v. Ward,* 117 Pa. Superior Ct. 125, 177 A. 515; *Thomas v. Thomas,* supra; *Wilhelm v. Wilhelm,* 130 Pa. Superior Ct. 143, 197 A. 496.

We said in *Mertz v. Mertz,* 119 Pa. Superior Ct. 538, 180 A. 708: "Respondent also argues that the fact libellant has made no overtures to her to return indicates that he consented to the separation. That is not enough. At best it merely indicates silent acquiescence, which, as we have seen, is insufficient. Such negative evidence does not meet the requirement of the law that there must be proof of some affirmative conduct amounting to participation in the separation."

Our study of the record leads us to the conclusion that the wife failed to establish that the separation was by consent, and confirms the opinion of the master, who saw and heard the parties testify, that the libellant is entitled to a divorce.

The decree of the court below is reversed. The libel is reinstated and the record is remitted to the court below with directions to enter the decree prayed for.