Knapp, Appellant, *v.* Knapp.

Argued April 26, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Esther Israel Katten,* for appellant.

*Zeno Fritz,* for appellee.

OPINION BY BALDRIGE, J., July 16, 1943:

The husband brought an action of divorce on the grounds of desertion and indignities. Testimony was taken before Judge MUSMANNO, who dismissed the libel. The husband has appealed.

The parties were married February 16, 1916, in Ashland, New York. The libellant was employed by the American Locomotive Company at Schenectady from 1909 until September 30, 1937, with the exception of three years during which time he was employed by the General Electric Company. A son was born to this marriage on August 15, 1917. On October 1, 1937, the parties moved to Pittsburgh where he is now employed by the American Steel Foundries as a Production Advisor.

We will not attempt to narrate the testimony in detail. It is sufficient to say that it shows that difficulties arose shortly after the marriage of these parties and continued until the time they ceased to live together. The husband is apparently a man of good habits, a steady, skilled worker who desired to live a quiet home life. The wife on the other hand, according to the husband's testimony, is a nervous woman with an ungovernable temper, and a jealous disposition, she entertained unfounded suspicions of his marital fidelity and other unwarranted fancies which caused her to be very hostile toward him. She harassed him in many ways including efforts to have him lose his employment and livelihood.

According to the testimony offered by libellant, while living in Schenectady this couple moved fifteen times due principally to the wife's dissatisfaction, her inability to get along with the neighbors, imagining without any cause that he was on intimate terms with some woman in the particular neighborhood in which they

happened to be living. She persistently created quarrels over trifles, required appellant to do the housework, wilfully smashed dishes, hit his car with an axe, threw stones and broke the glass in his car, required him and his son to bathe in the cellar in an ordinary wash tub when they had a good bathroom, and insisted almost all the time when they were home that they use the kitchen when other rooms were available. She pointed a gun at him and threatened to shoot him, refused to allow any of his business associates and friends to come to the house, frequently used profanity, opprobrious terms, and made serious charges against his mother's morality. When he had sciatica she found fault with him for that reason, became enraged because he consulted a doctor, packed her belongings and left him, and did not give him any information as to where she was going, saying that she could earn her own living. At that time she remained away approximately two weeks. The libellant left his position in Schenectady, having planned to move to Pittsburgh after talking with his wife and obtaining her consent, as he hoped that the change would be beneficial. They sold their house, receiving over and above the mortgage $1700, which the wife insisted upon having and he did finally give it to her. Later, when she was in Pittsburgh, at her insistence he gave her an order so that she obtained possession of all the furniture that had been placed in storage. Their home life in Pittsburgh did not solve their difficulties. She continued to nag and annoy him. Twice she locked him out of his house and on one occasion he had to sleep all night in a garage. She not only complained to her husband's boss about him, but also interviewed the wife of his boss in the hope, apparently, of obtaining her sympathy. Finally after she notified her husband that she would not live in Pittsburgh as she did not like the people there and that he would have to leave his job and

return to Schenectady, she went back to Schenectady but shortly thereafter returned to Pittsburgh for a brief time. Then the husband was living with Mr. and Mrs. Balotta. During this visit she made herself so objectionable in the house by her general belligerent and noisy attitude, her refusal to go to bed, and preventing the others in the house from sleeping, that Mrs. Balotta gave notice that she could not continue to stay in their home. After stating that she was only living with her husband to belittle and humiliate him she once more went to Schenectady. She returned in two weeks. This time, which was her last visit, she remained but one night.

The husband's testimony was corroborated in important features by other witnesses including his twenty-four year old son, who obviously did not have any affection for his mother.

The respondent denied much of the testimony offered by her husband although she conceded that she did not possess a very good temper. She complained that her husband was impatient, indifferent to her, failed to provide an adequate place to live; that he did not give her a cordial welcome when she returned to Pittsburgh or show in any way a desire that she live with him; that when she returned to Schenectady it was in accordance with an agreed plan not fulfilled due to her husband's action, that their son, who was in college in Kentucky, would spend the summer of 1938 with her in Schenectady; that he showed her no courtesy and when she was away he did not communicate with her. She was corroborated in minor matters by a couple of witnesses who had been neighbors some years ago in Schenectady.

We have given favorable consideration to the testimony of the Balottas. They corroborated the statements of the husband in many particulars as to the conduct of the wife during the two visits she made when

he was living at their home. Mr. Balotta testified that the respondent almost continually, day and night, was arguing, fighting, speaking in a loud voice, and many times pounding on the furniture, etc.; that the husband remonstrated with her insisting that she remain quiet so that he could obtain some rest. He said her general conduct almost made a "nervous wreck" out of his wife and himself. Mrs. Balotta testified to the same effect. Practically all the testimony given by the Balottas was unqualifiedly denied by the respondent and that is one reason we do not place much credence in her testimony.

We have repeatedly held that while it is the duty of the husband to provide a home, the obligation rests upon the wife to live with her husband at a reasonable place which he can afford to provide. His choice in the matter, however, is controlling provided it is exercised in good faith: *Laterza v. Laterza,* 124 Pa. Superior Ct. 103, 109, 188 A. 89. The burden rested upon the respondent under the circumstances present to show that she was justified in leaving her husband: *Grier v. Grier,* 143 Pa. Superior Ct. 463, 17 A. 2d 655. This she failed to do. No legal duty therefore, rested upon the husband to seek a reconciliation and ask her to return: *Winner v. Winner,* 122 Pa. Superior Ct. 382, 383, 186 A. 245.

We have recently said in *Di Stefano v. Di Stefano,* 152 Pa. Superior Ct. 115, 117, 31 A. 2d 357, that "false and totally unproven accusations of immorality, together with conduct maliciously designed to humiliate and embarrass libellant in his business and social life, made out a case of indignities." See, also, *Deutsch v. Deutsch,* 141 Pa. Superior Ct. 339, 14 A. 2d 586, as to the course of conduct which amounts to indignities.

We have not overlooked the fact that an order for support had been made against the husband, but that does not necessarily bar one from obtaining a divorce:

*Loughney v. Loughney,* 111 Pa. Superior Ct. 214, 169 A. 460. Nor have we been unmindful that the trial judge below had an opportunity to observe the manner of the witnesses and pass upon their credibility, but the duty rests upon us, in the absence of a jury trial, to consider the merits of the case and use our independent judgment as to whether legal cause for divorce has been established: *Starr v. Starr,* 134 Pa. Superior Ct. 497, 499, 3 A. 2d 939; *Dearth v. Dearth,* 141 Pa. Superior Ct. 344, 355, 15 A. 2d 37. This we have done.

We are convinced from a study of this entire record that the libellant's charges of wilful and malicious desertion and indignities to the person have been proven and that all the legal requirements have been met by the libellant.

Decree of the court below is reversed and it is hereby ordered that a divorce be granted to libellant on the ground of wilful and malicious desertion and indignities to the person.