DeDomenico *v.* DeDomenico, Appellant.

Argued April 18, 1947. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross and Arnold, JJ.

*Barney Phillips,* for appellant.

*Morris M. Berger,* for appellee.

Opinion by Dithrich, J., July 17, 1947:

For the failure of this comparatively short-lived marriage, the appellant respondent has only herself to blame. Throughout practically all her married life of eleven and one-half months, she was guilty of a course of conduct beginning three weeks after the marriage which rendered the condition of the appellee libellant intolerable and life burdensome. In many respects her course of conduct and her behavior pattern parallel those of the respondent in *Zonies v. Zonies,* 151 Pa. Superior Ct. 317, 30 A. 2d 193. There, as here, the libellant was a pharmacist. A pharmacist is required to work long hours, and rest and repose in his off hours are essential to his well being. Not only did respondent interfere with libellant's rest when he was off duty, but she allowed him precious little peace of mind when he was on duty.

On certain days of the week he was required to open the drugstore where he was employed at 8:30 a. m. Al-

most invariably when he opened the door, the telephone would be ringing. It would be his wife checking up on him to see if he had gone straight to work.

On days when he didn't open the store he worked late at night. When he got home from work, be it late at night or early in the evening, he would have to account for every minute of his time after leaving his place of employment. Not content with interrogating *him*, respondent frequently called the store after he had left to inquire the exact time of his departure.

The manager of the store testified that he personally answered such calls on an average of twice a week, and he further testified that on one occasion respondent charged her husband with being intimate with two women employed in the store. When the manager told her that both were respectable, happily-married women and that she had nothing to worry about, she refused to be reassured. She continued to embarrass libellant by calling his place of employment and interfering with his work, and even went so far as to tell one of the women that it would be her name and that of the other woman employee that would "be brought up in the divorce when I get it." When the witness told her she didn't want her "Tony," as she called him, that she and the other woman both had good husbands of their own, respondent said "two bums like you two would have."

Her attitude toward her husband's co-employees is typical of her attitude toward other women who she thought might have designs on him or with whom she suspected him of being intimate. On one occasion, when in one of her many hysterical moods, she went to the front door of the house where they were then rooming and called out, so that anyone passing by would hear, that "The landlady has kicked me out so that her daughter can have my husband." There was no justification whatever for her conduct on that occasion or on any other of the occasions when she openly charged or insinuated in the presence of others that her husband

was intimate with other women or that they were trying to take him away from her.

In addition to her unreasonable and entirely unprovoked jealousy, her ungovernable temper, emotional instability and hysterics, she made inordinate sexual demands on her husband. Partly as a result thereof, his weight dropped from 140 to 118 pounds. She brazenly told his father, his sister, and apparently anyone who would listen to her that her husband was not able to satisfy her sexually. One morning libellant fainted from sheer exhaustion. The woman with whom the couple was then rooming testified that she had heard the respondent arguing with libellant most of the night, and that earlier in the evening the respondent had told her that she was going to get all she could out of her husband sexually "before anyone else could get him."

Respondent's testimony was a categorical denial of all the charges brought against her, even an unqualified denial of the telephone conversations she had with the manager and the two women employees of the drugstore. That is one of the reasons why we cannot place much credence in her testimony. In explanation of her loud conduct as detailed by the several owners of the premises where they had rooms at various times—they moved six times during their short married life—she testified that her husband had been beating her. She said she had lost a lot of time from her work in the local office of the Unemployment Compensation Bureau because of such beatings, but the only corroboration of that testimony was that of her sister who testified that she saw evidence of abuse on the body of respondent several times when respondent returned to the home of her mother. In that connection it is significant that when she was called to the residence of a Mrs. Douer about three o'clock one morning after libellant is alleged to have severely beaten respondent, she saw no evidence of abuse. Neither did Mrs. Douer. The latter corroborated the testimony of libellant that the witness slapped her sister's face to

bring her out of her hysterics, and remarked that she had done it before and could do it again.

Respondent takes the position that libellant is not the injured and innocent spouse. It is our independent judgment that he is. Respondent did not attempt to prove, nor even to lay a basis for her belief, that he had been unfaithful to his marital vows. In *DiStefano v. DiStefano,* 152 Pa. Superior Ct. 115, 31 A. 2d 357, this court said, page 117, that "false and totally unproven accusations of immorality, together with conduct maliciously designed to humiliate and embarrass libellant in his business and social life, made out a case of indignities." See also *Knapp v. Knapp,* 152 Pa. Superior Ct. 412, 33 A. 2d 88; *Zonies v. Zonies,* supra.

"The essential feature of the offense of indignities to the person is that it must consist of a course of conduct or continued treatment which renders the condition of the innocent party intolerable and his or her life burdensome. [Citing cases.]": *Martin v. Martin,* 154 Pa. Superior Ct. 313, 317, 35 A. 2d 546. Our examination and review of the testimony convinces us that all the essential elements are present in the instant case and that libellant has made out a case of indignities by a clear preponderance of the evidence.

Decree affirmed.