Duncan *v.* Duncan, Appellant.

Submitted April 15, 1952.   Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Anthony Cavalcante,* for appellant, submitted a brief.

No appearance was made nor brief submitted for appellee.

OPINION BY ROSS, J., July 17, 1952:

In this divorce action the master recommended that a divorce be granted to the libellant husband on the ground of desertion. The Court of Common Pleas of Fayette County, sitting in banc, dismissed respondent's exceptions to the master's report and entered a decree in divorce, and respondent wife has appealed.

Appellant bases her appeal on the ground that libellant has failed to establish a desertion within the meaning of section 10 as amended of the Act of May 2, 1929, P. L. 1237, 23 PS sec. 10, which requires "wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years".

The parties were married on September 2, 1943, at which time libellant was 53 years old and respondent 42. Libellant had been a widower and was the father of five children, none of whom resided with the parties, but two grown daughters, working in Pittsburgh, spent every other weekend at the home. Libellant was a mine foreman and left his home to go to work at one o'clock every day of the week and worked until midnight. Previous to her marriage to libellant, respondent had resided with an aunt next to the home of her mother, about a mile away from the home of the parties, in rural Fayette County. Her mother was in ill health, so from the very beginning of her marriage respondent formed the habit of going to visit her daily. She left the marital residence sometime after libellant's departure for work and returned with libellant, who would have the driver of the car, with whom he and

other men were returning home, stop at the mother's home to pick her up.

There is evidence of friction between step-mother and step-daughters over the arrangement of household articles, but the real source of marital difficulties seems to have stemmed from respondent's daily visits to her mother and her transportation home at night. Libellant testified that he approved of respondent's visits to her mother "twice a week but not every day", but that he objected seriously to being subjected to the embarrassment of having the other workmen wait every night until his wife boarded the car at her mother's home and to her crowding the other passengers, and that he told her he "wouldn't pick her up anymore". Respondent insisted she was afraid to stay at the home of the parties in the evening and persisted in the daily routine. On a night in October 1944 libellant instructed his driver to pass by, leaving respondent at her mother's home all night. When she returned home the next morning she was admitted by libellant and an altercation ensued, after which libellant left for his work and respondent went back to her mother's home. Libellant again did not stop for her a second time, and again she returned home in the morning. On this occasion she did not find the key to the back door at its usual place in the ice box on the back porch. She came back to the house every day during the succeeding week or ten days only to find herself without a key and "locked out". Respondent then instituted desertion and nonsupport proceedings against libellant, which action the presiding judge, by order of November 24, 1944, continued for thirty days to give the parties time for reconciliation, which latter, however, failed to materialize. Respondent brought a second action and the court, on December 29, 1944, entered an order on libellant to pay respondent $60 a month for her support. Subsequently, accompanied by a constable, her sister

and a woman friend, respondent returned to the marital home long enough to pick up her clothes, and never returned again.

The only question involved is whether respondent's absence constituted "wilful and malicious desertion" within the meaning of our Divorce Law. It is admitted that no offer of reconciliation was tendered by either party. Respondent testified on cross-examination: "Q. And during that thirty-day period that the Court felt you should use in getting together again, what did you do towards getting together with your husband? A. Well, I didn't do anything. I figured that was his place, not mine . . . because he put me out. Q. . . . all the time since then have you ever talked to your husband and tried in anyway to go back to him and be a wife to him? A. I never seen Mr. Duncan to talk to him."

The law is well settled in this Commonwealth that where one spouse leaves the marital abode and remains absent for a period of two continuous years, the party who has absented himself or herself is a "deserter" within the meaning of our Divorce Law unless (1) the separation is by mutual consent, or (2) the party absenting himself has "reasonable cause", which means such grounds as will in themselves justify a divorce in his favor. *Boughter v. Boughter*, 164 Pa. Superior Ct. 574, 67 A. 2d 812. Where, as here, there has been a separation for the required statutory period, the burden is on respondent to prove consent or a reasonable cause for her withdrawal from the matrimonial domicile. *Mertz v. Mertz*, 119 Pa. Superior Ct. 538, 180 A. 708; *Dougherty v. Dougherty*, 166 Pa. Superior Ct. 219, 70 A. 2d 411. Whether respondent has sustained that burden of proof is the determinative issue.

What constitutes "consent" to a separation must in each case be determined by examining the conduct of the parties and deciding what is the reasonable ef-

fect of their manifestations. In the *Mertz* case, supra, libellant, in a burst of anger, said to respondent, "There's the door. Leave if you want to." We granted libellant a divorce on the ground that his words, because they were spoken in the heat of anger, did not manifest consent. In the present case, the fact that libellant failed to stop for his wife to bring her home with him is equally insufficient to establish initial consent to the separation. However, the law recognizes that what in its inception constitutes desertion can be turned into a consensual separation by the subsequent conduct of the parties. Where a separation which constituted a wilful desertion in its inception becomes a separation by consent within two years, it is not ground for divorce. *Doering v. Doering,* 157 Pa. Superior Ct. 9, 41 A. 2d 358. Here the evidence establishes that on the second day when respondent returned to the home, libellant had taken the key which unlocked the door from its usual place and she had no means of access to the house. Libellant admitted having removed the key but explained his having done so on the ground that prowlers would have had equal access to the house. However, libellant must have known that by so doing he was thereby excluding his wife from the home.

President Judge RHODES stated the governing principle of law when, in *Mailander v. Mailander,* 168 Pa. Superior Ct. 546, he wrote, at page 549: "Consequently we are of the opinion that from the record before us libellant has failed to establish desertion on the part of respondent. To justify a divorce in his favor on such ground he must have been *ready and willing to have respondent come back to him during the entire two year period* after the separation." (Italics supplied.) If during that time he expressed unwillingness to have her live with him, her subsequent remaining away would be excusable and not a willful and mali-

cious desertion. *Trussell v. Trussell,* 116 Pa. Superior Ct. 592, 177 A. 215. For restatement of the rule, see *Mumma v. Mumma,* 169 Pa. Superior Ct. 221, 82 A. 2d 274, citing *Ziegenfus v. Ziegenfus,* 159 Pa. Superior Ct. 521, 49 A. 2d 275, and *Latour v. Latour,* 162 Pa. Superior Ct. 75, 56 A. 2d 332. In our opinion libellant's action in removing the means of access to the house indicates clearly an unwillingness to have respondent return, and a consent on his part to her continued absence.

Decree reversed and libel dismissed.