Jablonski *v.* Jablonski, Appellant.

338

Submitted November 18, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

 reargument refused January 8, 1959.

*Ferdinand F. Bionaz,* for appellant.

*Harry Shapera, James H. Brennan, T. Robert Brennan,* and *Brennan and Brennan,* for appellee.

OPINION BY WRIGHT, J., December 9, 1958:

On October 14, 1953, Walter Jablonski filed a complaint in divorce against his wife, Verna Jablonski, on the ground of indignities to the person. On September 23, 1955, the complaint was amended to include a charge of desertion as of September 23, 1953. The action was thereafter proceeded upon solely on the ground of desertion. In a well-prepared and persuasive report, filed October 30, 1956, the master recommended that the complaint be dismissed. On May 22, 1958, the court below handed down an opinion sus-

taining the husband's exceptions, and entered a final decree. The wife has appealed.

Walter Jablonski and Verna Krisko were married on May 23, 1953. They were then in their late twenties. At the time of the marriage Walter was living with his parents on a farm near MacDonald, Allegheny County, but promised to promptly build a separate home. Verna agreed to live temporarily in the home of Walter's parents. Naturally enough, this mode of existence was unsatisfactory and, according to the finding of the master, animosity arose between Verna and Walter's mother. Walter kept postponing the establishment of a separate home upon the ground that he was too busy. On September 23, 1953, just four months after the marriage, Walter came home late at night and lay down on the couch in the dining room, refusing to occupy the marital bed. An argument ensued and Verna said she would leave if Walter did not want to sleep with her. Verna testified that Walter said, "Go to your mother". In any event, Verna did leave after midnight and walked several miles to the home of a neighbor. The next morning she called Walter to come and pick her up and he said, "No, to go home". Verna wrote several letters but Walter did not answer her correspondence or make any effort to contact her. A female child, Carol Jablonski, was born on June 1, 1954, and is presently in Verna's custody. Later that year Verna instituted an action for support in the Court of Quarter Sessions of Cambria County, as a result of which an order of support was entered in the amount of $65.00 a month. The record plainly discloses that Walter was unwilling to leave his parents. His attitude is perhaps best illustrated by his startling admission that he did not love Verna when he married her.

In the recent case of *McElroy v. McElroy*, 185 Pa. Superior Ct. 78, 138 A. 2d 299, we reiterated several fundamental general principles, as follows: "It is our duty to make an independent investigation of the evidence in order to determine whether in truth it does establish a legal cause for divorce . . . While we are not concluded thereby, the master's appraisal of the testimony is entitled to the fullest consideration especially when, as in the instant case, his report presents a searching analysis . . . The Commonwealth is a party to all divorce proceedings and a decree of divorce must be founded upon compelling reasons, and upon evidence that is clear and convincing". In the case at bar, the burden was upon Walter to establish Verna's desertion by clear and convincing evidence, *Donald v. Donald*, 155 Pa. Superior Ct. 90, 38 A. 2d 376, and this he entirely failed to do. See also *Rood v. Rood*, 117 Pa. Superior Ct. 291, 178 A. 173; *Hess v. Hess*, 105 Pa. Superior Ct. 596, 161 A. 743.

The obligation of a husband is to set up a separate home, and a refusal by the wife to live with the husband in the home of his parents does not constitute desertion. *Latz v. Latz*, 157 Pa. Superior Ct. 329, 43 A. 2d 435. Other cases to the same effect are *Harmony v. Harmony*, 156 Pa. Superior Ct. 248, 40 A. 2d 130; *Donald v. Donald*, supra, 155 Pa. Superior Ct. 90, 38 A. 2d 376; *Duchossois v. Duchossois*, 139 Pa. Superior Ct. 1, 10 A. 2d 824; *Rood v. Rood*, supra, 117 Pa. Superior Ct. 291, 178 A. 173. This controlling principle was properly recognized by the master in the instant case. As the withdrawal of the wife was not a wilful and malicious absence from the habitation in the first instance, the statutory period could not begin to run until there was conjoined with the physical separation of the parties the other necessary ingredient, namely, the wife's manifested intention to desert, exhibited

either by a refusal of the husband's bona fide offer to resume cohabitation or a repudiation of the wife's marital obligations communicated by her to the husband: *Landymore v. Landymore*, 157 Pa. Superior Ct. 651, 43 A. 2d 396.

In the case at bar the wife never refused to return to her husband nor did she indicate to him that an offer of reconciliation would be fruitless. At the nonsupport hearing in Cambria County the husband was admittedly asked by the hearing judge whether he was willing to live with his wife and he did not answer. He testified: "I didn't give him no definite answer on that". It clearly appears that he never did establish or maintain a residence separate from the home of his parents. The wife was under no duty to return to her husband under such circumstances.

The decree of the court below is reversed, and the complaint in divorce is dismissed.