DiMilia *v.* DiMilia, Appellant.

Argued June 13, 1964. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*Thomas D. McBride,* with him *Anthony S. Minisi, Judah I. Labovitz,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*Frank F. Truscott,* with him *Otis W. Erisman,* and *Truscott, Kline, O'Neill & Howson,* for appellee.

OPINION BY WATKINS, J., September 17, 1964:

In this appeal from the final decree in divorce a.v.m. of the Court of Common Pleas of Montgomery County in favor of Gino DiMilia and against Hilda DiMilia, the questions raised by the wife-appellant are (1) the jurisdiction of the court by reason of the residency of the husband-appellee; (2) whether there was a desertion under the law; and (3) whether the husband was an injured and innocent spouse.

The parties were married on June 28, 1948 at Montclair, New Jersey. There are no children of the marriage. They have resided together and separately in various places in Pennsylvania and New Jersey. At the time of the alleged desertion the place of residence was 309 Motel, Montgomeryville, Montgomery County, Pennsylvania. The husband admits that, although he lived in Pennsylvania most of the time since 1953 at various addresses, where on many occasions his wife stayed with him, they continued to maintain an apartment at 47 North Fullerton Avenue, Montclair, New Jersey. It is contended that the husband decided to become a resident of Pennsylvania in 1958.

This action in divorce was brought on August 23, 1961 and charged indignities to the person and desertion occurring and persisted in since April 17, 1960. The master held nine hearings and on July 17, 1963, filed his report holding that the complaint as to indignities had not been made out; but found that the husband had been domiciled and had resided in Pennsylvania since 1958; that the averments as to desertion had been sustained and recommended that a divorce be

entered on that ground. The wife filed exceptions to the master's report. The exceptions were dismissed by the court below and the final decree entered.

This Court has "held many times that the opinion of the master should receive great consideration as the court reviews the record de novo." *DiTroia v. DiTroia,* 202 Pa. Superior Ct. 7, 9, 193 A. 2d 877 (1963). "The master's report, although advisory only, is to be given the fullest consideration as regards the credibility of witnesses whom he has seen and heard, and in this respect his report should not be lightly disregarded." *Shoemaker v. Shoemaker,* 199 Pa. Superior Ct. 61, 65, 184 A. 2d 282 (1962). The master's report in this case indicates a careful and detailed analysis of the record and his findings and conclusions are clear and concise.

The wife contends that the husband was not a bona fide resident of Pennsylvania for one year prior to the filing of the complaint. The Divorce Code of May 2, 1929, §16, as amended, 23 PS §16. "Bona fide residence" means "residence with domiciliary intent". *Horne v. Horne,* 191 Pa. Superior Ct. 627, 631, 159 A. 2d 239 (1960). By domicile is meant the place where a person has his true, fixed, permanent home and principal establishment; and to which, whenever he is absent, he has the intention of returning. *Dorrance's Estate,* 309 Pa. 151, 173, 163 A. 303 (1932).

"The proof of a change of domicile does not depend upon any particular fact but upon whether all the facts taken together tend to establish a new, fixed and permanent residence." *Com. ex rel. Saunders v. Saunders,* 155 Pa. Superior Ct. 393, 396, 38 A. 2d 730 (1944). "Intention is always an elusive concept and what factors, in a given case, exhibit such intention will usually be determined by and be dependent upon the facts and circumstances of the case." *Chidester v. Chidester,* 163 Pa. Superior Ct. 194, 198, 60 A. 2d 574 (1948). See:

Restatement, Conflict of Laws, §11 (Pa. Annotations) for collection of cases. "Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except facto et animo." *McCauley v. McCauley,* 184 Pa. Superior Ct. 361, 366, 134 A. 2d 684 (1957).

The facts upon which the husband relies for proof of residence in Pennsylvania long before the statutory requirement are as follows: That he had not spent as many as two consecutive days in New Jersey since 1958 except on one occasion when he spent two days to examine company books; that the husband incorporated his corporation, known as G. H. D. Construction Company and undertook a job in July of 1957 which ended in the fall of 1958; that he was in the business of sewer construction; that at the time he took the job in July, 1957, husband and wife did not return to Montclair, New Jersey but stayed five to six months in their Devon, Pennsylvania apartment; that in December, 1958 the G. H. D. Company purchased land in Souderton, Pennsylvania and erected an office building on the land; that from May, 1959 to April, 1960 they lived in a rented house in Middletown, Pennsylvania which they furnished themselves; that in March of 1960 the husband and wife signed a lease for an apartment in Glenside, Pa., for a term of one year beginning on May 1, 1960.

The record further discloses that the wife left Pennsylvania in April, 1960 to go back to New Jersey where she has lived to this date; that husband moved into the Glenside apartment on or about May 1, 1960 and lived there until May 10, 1961; that on that date he was admitted to the hospital and was discharged May 20, 1961; that he then moved to quarters in a private

home at North Wales, Pa., where he continued to reside up to the date of hearing; that the husband who is a sewer contractor has not worked anywhere but in Pennsylvania since 1957; that since 1959 he has attended and contributed to the Catholic Church in Montgomery County; that he transferred the registrations of his cars from New Jersey to Pennsylvania in 1959; that in the latter part of 1959 he unsuccessfully negotiated for the purchase of a home in Montgomery County; that he had a family doctor in Montgomery County, Pa.; that he maintained personal and business bank accounts in Pennsylvania since 1959 and cancelled his accounts in New Jersey; that all clothing, equipment, cars, materials, supplies, and personal needs for four years prior to the master's hearing were purchased in Pennsylvania; that none of his clothing is in New Jersey since 1958; and that he intended to be a resident and domiciliary of Pennsylvania since 1958.

The wife contends that he did not meet the domiciliary requirements because: He renewed his New Jersey driver's license in 1961; that the parties' joint income tax return for 1960 listed Montclair, New Jersey as their address and a deduction was claimed for travel expenses from New Jersey to Pennsylvania. These same contentions were made in *Anderson v. Anderson,* 172 Pa. Superior Ct. 527, 94 A. 2d 104 (1953), which held that they were circumstances to be considered but are not controlling. Many times income tax returns are filed with the sole idea of tax savings in mind. As the court below said: "The signing of the license applications and the signing of the tax papers may have resulted from carelessness or indifference or something worse. It is not necessary to consider plaintiff's morality in the handling of these matters. Suffice it to say that they do not control over the plain facts of plaintiff's actual residence with domiciliary intent in Pennsylvania for the required statutory pe-

riod." It is noteworthy that the deduction for expenses was disallowed by the Dept. of Internal Revenue and that the returns were prepared by a New Jersey accountant friendly to the wife's family.

The husband voted in New Jersey in November of 1960. The wife conceded that she had requested him to come and vote in New Jersey. "It has been said by some authorities that the exercise of the right of suffrage is conclusive of domiciliary intent. This is not the law in Pennsylvania." 1 Freedman, Law of Marriage and Divorce in Pennsylvania (2d Ed. 1957), §118, at page 290. It is a circumstance to be considered but is not conclusive. *Anderson v. Anderson,* supra. See also: *McShea's Est.,* 20 Pa. D. & C. 222 (1934) ; *Chidester v. Chidester,* supra. In *Dorrance's Estate,* supra, the husband and wife voted a dozen times in New Jersey and this exercise of franchise was held not to be controlling.

On the issue of plaintiff's residence and domiciliary intent the master's finding that he had "no difficulty in deciding that the plaintiff was domiciled and resided in Pennsylvania for a period more than one year prior to . . . August 23, 1961. As a matter of fact, the master is of the opinion that the plaintiff has been domiciled and has resided in the Commonwealth of Pennsylvania since 1958." This was approved by the court below. Our review of the evidence leads us to the same conclusion.

The husband charges that his wife deserted him from their home at 309 Motel in Montgomeryville, Pennsylvania, on April 17, 1960 and continued in such desertion for more than the two-year statutory requirement. The wife contends that the husband is not an injured and innocent spouse and that she had legal justification for the separation. She related that the husband hit her once in 1954, once in 1955, once in 1957 and once in 1959 and finally in April, 1960 the

day of the separation. These accusations of violence were widely spaced and she excused several of them by saying: "He was aggravated and tired" or "he was nervous" or that he did what he did out of frustration at not doing better in business—"never anything personal." She testified that on April 17, 1960 Easter morning, he threatened her, cursed her, called her a "stupid pig", kicked her, and threw her to the floor causing injury to her eyes, nose, head and face and various other parts of her body; that she screamed for help; that he left and returned in about one-half hour bringing her coffee and a bun; that she could not get out because she was "crying and bleeding"; that they later went to Shoyer's Restaurant for dinner and then to the movies and then back to the motel; that she waited until Monday to return to Montclair, N. J. The husband denied this story.

There was testimony by hotel employees that they didn't hear screams or noise and didn't see marks on the wife. The question of her credibility was resolved against her by the master and concurred in by the court below in that her description of the events of the day is incredible and not worthy of belief.

The wife admitted that the husband had requested her many times to live with him in Pennsylvania and that she had refused. "The choice of a home by the husband is controlling if made in good faith. . . . Where the wife fails to comply with this duty, she is guilty of desertion and no further offer of reconciliation need be made by the husband." *Greer v. Greer*, 178 Pa. Superior Ct. 643, 646, 115 A. 2d 794 (1955). Reading between the lines of this record the desertion by the wife was motivated by a desire to remain with or near her father, a very successful contractor in New Jersey and to force her husband to follow her there. Until the husband formed his own company and established his independence he was bound to the wife's father's busi-

ness.   When the decision had to be made by this wife between her husband's home and her father's home, she chose the latter.

In most divorce cases there is some evidence that the husband was not completely without fault.   "We are not called upon to balance . . . mutual delinquencies, but only to determine which party is the least open to the charge of causing the situation."   *Breene v. Breene,* 76 Pa. Superior Ct. 568, 573 (1921).   In the present case the husband has made a record that adequately satisfied and discharged his burden of proof.

Decree affirmed.