## Santarsiero v. Santarsiero, Appellant.

Argued June 11, 1974. Before WATKINS, P. J., HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ. (JACOBS, J., absent).

*Thomas J. Jones,* for appellant.

*Joseph Santarsiero,* in propria persona, with him *Michael W. Simon,* for appellee.

OPINION BY WATKINS, P. J., December 11, 1974:

This is an appeal from a decree of the Court of Common Pleas of Lackawanna County granting a divorce to the husband-appellee, Joseph Santarsiero, from his wife-appellant, Catherine Santarsiero, on the grounds of desertion.

The couple were married on August 8, 1957. Both had been married previously, their former spouses having died. At the time of the appeal the appellee was

74 years of age and the appellant was 70 years of age. It is undisputed that the couple live with the appellee's unmarried daughter at 618 East Warren Street, Dunmore, Pennsylvania, from the time of their marriage in 1957 until November 30, 1970, when the appellant removed herself from the marital abode and went to live with her son in Levittown, Pennsylvania.[1]  On December 4, 1972, the appellee filed a complaint in divorce against the appellant and on January 10, 1974, the Court of Common Pleas of Lackawanna County granted the divorce on the grounds of desertion.

The issues in this case are whether the wife's actions in removing herself from the marital domicile were justified for any reason and whether she had made sufficient attempts at reconciliation so as to vitiate her leaving as a grounds for divorce.

It is well established that the choice of the marital home is the husband's, if made in good faith, and that the wife's failure to comply with her duty of living with her husband constitutes grounds for desertion. *DiMilia v. DiMilia*, 204 Pa. Superior Ct. 188, 203 A. 2d 382 (1964); *Sacks v. Sacks*, 200 Pa. Superior Ct. 223, 188 A. 2d 856 (1963); *Pfeiffer v. Pfeiffer*, 154 Pa. Superior Ct. 154, 35 A. 2d 551 (1944). The record in the instant case demonstrates that the wife left the home where she and her husband had lived since the date of their marriage. No reason for leaving the home was given by the wife except that she objected to living in the home because her husband's unmarried daughter lived there with them. There is no evidence of fighting or quarreling between the parties as to this matter or as to any other matter. It appears that Mrs. Santarsiero simply decided to remove herself from the marital abode and

---

[1] The evidence also established that the appellant left the marital domicile, without explanation for short periods of a few weeks in 1959 and in 1963.

did so, then, over six months later, presented her husband with an ultimatum to the effect that she would not live with him unless he consented to her choice of residence. This conduct flies in the face of the well-established doctrine that it is the husband's choice of domicile, so long as it is exercised reasonably and in good faith, which is controlling.

In our case, the record shows that the appellee had lived at 618 East Warren Street, in Dunmore, Pennsylvania since 1950 when he bought the home. Although he had subsequently transferred full title to the home to his daughter, it had been with the understanding that he be permitted to reside in the home with his wife so long as he desired. The daughter had never attempted to or threatened to evict them from the premises and charged them no rent. Also, the appellee worked as a carpenter in Dunmore and the marital home was convenient for his work. He also was a lay preacher at one of the local churches. All his friends were in the neighborhood. The appellee's daughter worked nearby while the appellant held no job and spent the day at home. Under the circumstances, we feel that the appellee had indeed provided the appellant with an acceptable home and that her action in leaving the home was not justified.

The case of *Barnes v. Barnes*, 156 Pa. Superior Ct. 196, 40 A. 2d 108 (1944), held that where a husband provided a home for his wife and where the wife left, rented another house, moved all the household goods thereto, and left a note at the old address impliedly inviting her husband to join her but where she did not return to her husband that the husband was entitled to a divorce on grounds of desertion. The situation in *Barnes*, supra, is very similar to the case at hand. Although the appellant had hinted at various times that she would be willing to reconcile with her husband she always maintained, even at the hearing before the court,

that such reconciliation could only be accomplished upon his submission to her choice of homes.[2]  Therefore, her attempts at reconciliation, if they can be called such, were always conditional upon a factor which the law of Pennsylvania has always held to be the husband's prerogative and responsibility, i.e., providing a home for his family.  Since no attempt at reconciliation on the part of the husband is needed when the wife leaves the marital domicile, *Sacks v. Sacks,* supra, and since we find that the wife's conduct fell short of amounting to genuine reconciliation efforts we hold that the court below was correct in awarding the appellee a divorce on the grounds of desertion.

Appellant cites the cases of *Commonwealth ex rel. Hrechany v. Hrechany,* 201 Pa. Superior Ct. 159, 191 A. 2d 735 (1963), and *Jablonski v. Jablonski,* 188 Pa. Superior Ct. 337, 146 A. 2d 813 (1958), for the proposition that a wife's refusal to live with her husband in the home of his relatives does not constitute desertion. These cases held that a wife's refusal to live with her husband's parents is not a ground for desertion.  Neither *Hrechany,* supra, nor *Jablonski,* supra, presented a factual situation similar to this one.  In both cases a young wife left her husband because of friction with his parents.  In our case an elderly couple was residing in a home in which the husband had a life interest at the time of the marriage.  It was only after 11 years after the marriage that the husband transferred all of his interest in the premises to his daughter with the

---

[2] Appellant had stated at the hearing before the court below that she would live with her husband under her conditions. At this time, of course, the two-year period for desertion had passed.  The appellant had approached and talked with appellee several times subsequent to her leaving the marital domicile on November 30, 1970 and before the two-year period. However, the record indicates that none of these meetings amounted to a bona fide attempt at reconciliation.

understanding that the parties would continue to live there. The record shows that at the time of the marriage, the wife knew that she would live in the home with the daughter at the address shown above and agreed to it.

The wife produced no evidence of any friction between herself and the daughter so has shown no justification for leaving her husband as she did.

Decree affirmed.

---

DISSENTING OPINION BY SPAETH, J.:

In this divorce action the issue is whether the record is sufficient to support the lower court's finding of desertion. I cannot agree with the majority that it is.

Joseph Santarsiero, the plaintiff-appellee, and Catherine Santarsiero, the defendant-appellant, were married on August 8, 1957. He is seventy-four years old, and she is sixty-eight. Both were married previously and widowed. Plaintiff is a carpenter who until December, 1970, also served as pastor of the Glendale Church.[1] Defendant does volunteer missionary work. During their marriage the parties resided in the home of plaintiff's unmarried daughter, Lucy, who is now forty-seven years old, at 618 East Warren Street, Dunmore, Pennsylvania. Defendant has left this home three times for varying periods.[2] It is the third separation,

---

[1] In December, 1970, plaintiff announced to the members of his congregation that because his wife had left him he would no longer be their preacher. On direct examination he explained that "my conscience wouldn't allow me to preach . . . [b]ecause my wife left me."

[2] The first separation occurred in approximately 1959 when she left without prior notice, and remained away, at her son's home, for one week. The second was in 1963. The testimony differs as to the length of this absence. Defendant claims to have been away for only three weeks, while plaintiff and his daughter say it was for two months. As there was condonation of those first two absences, they

which began on November 30, 1970, and still continues, that is the basis of this action.

The Act of May 2, 1929, P. L. 1237, §10, 23 P.S. §10, provides: "1. When a marriage has been heretofore . . . contracted and celebrated between two persons, it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, in the manner hereinafter provided, that the other spouse: . . . (d) Shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years . . . ."

In a desertion case the burden is initially on the plaintiff to prove the defendant's "absence from the habitation . . . for . . . two years . . . ." *Wagner v. Wagner*, 223 Pa. Superior Ct. 241, 244, 299 A. 2d 45, 47 (1972); *Ziegenfus v. Ziegenfus*, 159 Pa. Superior Ct. 521, 522, 49 A. 2d 275 (1946). In the present case this burden was carried, for defendant admits that on November 30, 1970, she ceased residing on East Warren Street, and that she has not lived there since that time.

When the plaintiff has proved absence from the habitation the burden shifts to the defendant "to establish by clear and convincing evidence that (1) her separation from him was not desertion because plaintiff had consented or encouraged it; or (2) her separation was not willful and malicious desertion but was justified by his unlawful conduct which amounted to grounds for divorce." *Wagner v. Wagner, supra* at 244, 299 A. 2d at 47. *See also Zimmerman v. Zimmerman*, 428 Pa. 118, 123, 236 A. 2d 785, 788 (1968); *MacDonnell v. MacDonnell*, 190 Pa. Superior Ct. 397, 400, 154 A. 2d 267, 268

do not constitute grounds for divorce. 1 A. Freedman and M. Freedman, Law of Marriage and Divorce in Pennsylvania §252 at 628 (1957).

(1959) ; *Ewing v. Ewing*, 140 Pa. Superior Ct. 448, 449, 14 A. 2d 149, 150 (1940). Defendant here has advanced several arguments to the effect that her evidence came within this statement of the law.

Defendant first argues that she did not desert plaintiff because plaintiff by his actions consented to and encouraged their separation. The only evidence supporting this is that of defendant's witness, Mrs. Beatrice Beppler. She stated that on December 6, 1970, in response to her expression of condolence about his marital situation, plaintiff said, "Sorry? . . . Don't be sorry . . . hallelujah, hallelujah." This may have reflected bitterness, or mere bravado, or perhaps, as defendant suggests, it was a true expression of plaintiff's desire to be rid of his wife. Opposing defendant's suggestion is the fact that on cross-examination plaintiff stated that if there "was a possibility that she was honest [about wanting to return to him] in her own heart, [that there was] sincerity there—perhaps—even then I would think of reconciliation." In any case, however one interprets plaintiff's remark to Mrs. Beppler, it does not amount to "clear and convincing evidence" of plaintiff's consent to his wife's departure.

Defendant next argues that plaintiff manifested his consent to their separation by refusing to have her back even though she offered to be reconciled with him.

"What constitutes consent to a separation must be determined by examining the conduct of the parties, and ascertaining what is its reasonable effect. The intent to desert must have been wilfully and maliciously persisted in for the entire period. The guilty intent is rebutted where the separation is encouraged by the other party. And if plaintiff manifests an unwillingness to have defendant return, her subsequent absence is excusable." *Totino v. Totino*, 176 Pa. Superior Ct. 108, 112, 106 A. 2d 881, 883 (1954) ; *Clark v. Clark*, 172 Pa.

Superior Ct. 5, 8, 92 A. 2d 236, 237 (1952); *Duncan v. Duncan*, 171 Pa. Superior Ct. 69, 74, 90 A. 2d 357, 359 (1952); *Mailander v. Mailander*, 168 Pa. Superior Ct. 546, 549, 79 A. 2d 805, 806 (1951). Here it appears that plaintiff made no attempt to communicate with defendant during her absence. This fact, however, is not by itself sufficient to "manifest . . . [his] unwillingness to have defendant return." As noted above, on cross-examination plaintiff indicated that he did not think his wife honestly wanted to return. Moreover, "[w]hen a wife deserts her husband he is under no legal obligation to seek a reconciliation, but he nevertheless 'must leave the door open' for her return during the full period of two years." *Commonwealth ex rel. Cartmell v. Cartmell*, 164 Pa. Superior Ct. 108, 109, 63 A. 2d 691, 692 (1949), citing *Winner v. Winner*, 122 Pa. Superior Ct. 382, 385, 186 A. 245, 246 (1936). " 'Mere silence does not establish consent. The respondent having withdrawn from the home it was not incumbent upon the libellant to seek a reconciliation nor to ask the wife to return. To the contrary it is the duty of a deserting wife to seek an appeasement and until this has been done consent to the separation is not established . . . .' " *Hochberg v. Hochberg*, 166 Pa. Superior Ct. 306, 308, 70 A. 2d 864, 865 (1950), citing and quoting from *Ewing v. Ewing, supra* at 452, 14 A. 2d at 151; *Winner v. Winner, supra* at 384, 186 A. at 246.

When defendant departed East Warren Street on November 30, she left a signed note that stated, in part, "Joe, I took care of this house long enough and I don't intend to take care of this home any longer." She did not say where she was going. During the next two years, however, plaintiff and defendant saw each other at least six times. Plaintiff and defendant differ as to what happened at each of these meetings, and their testimony

is mainly uncorroborated.[3] Defendant claims to have made overtures of reconciliation, using such words as "Joe, I love you . . . I can make a home out of a barn;" and "Joe, I wish you would come and live with me . . . You wouldn't make a home for me, aside from your daughter, but . . . I have made a home for you and I wish you would come and live with me." She further claims to have been rebuffed with such words as "I made a fool of myself once and I'm not going to do it again," and such negative actions as a wave of the hand, a side to side shake of the head, and a gesture as if to brush her away. However, defendant never attempted to visit plaintiff at his home on Saturday or Sunday, when she knew he would be there, nor did she communicate her desire to return to him through friends or relatives.

The opinion of the lower court is very brief. While the judge does indicate that he did not accept defendant's testimony, it is not possible to determine whether he did not accept it because he did not believe it, or because although he believed it, he did not consider it legally sufficient. The judge's entire discussion on this matter is as follows: "The next question is did the Defendant during the two years desertion period make a bona fide, unconditional offer of reconciliation. The meetings of the parties in August and November, 1972 do not meet the requirements of bona fide offer of reconciliation. From the testimony it appears that both times she went to Dunmore, primarily to see neighbors. The party relying on the offer of reconciliation as a defense has the burden of proving by clear and convinc-

---

[3] The only instance of corroboration is as to a meeting on May 6, 1972, at the Moosic Community Center Fellowship dinner. Plaintiff claims not to have seen defendant. However, defendant's two witnesses, Mrs. Beppler and Mrs. Bennie, testified that plaintiff saw defendant and then, after noticing her, left.

ing evidence that the offer of reconciliation was bona fide. The words and actions of the Defendant do not meet this burden."

In *Zimmerman v. Zimmerman, supra* at 123, 236 A. 2d at 788, the test of legal sufficiency was stated as follows: "To avoid the grant of a divorce on the ground of desertion Mrs. Zimmerman's only recourse was to establish that she had made a *bona fide* offer of reconciliation and to return to the matrimonial domicile which offer her husband had rejected. Such an offer had to be made in good faith, pursuant to a sincere desire to resume marital relations, and within the applicable statutory period: Colin v. Colin, [190 Pa. Superior Ct. 125, 151 A. 2d 801 (1959)]; Helm v. Helm, 143 Pa. Superior Ct. 22, 25, 17 A. 2d 758 (1941). That such offer was made must be established by clear and convincing evidence." If this statement is literally applied to the facts of the present case it is apparent that defendant's evidence was insufficient, for she did not offer "to return to the matrimonial domicile." However, within the two-year statutory period, she did offer to live with plaintiff, if only he would live in the home "I have made . . . for you" instead of in his daughter Lucy's home. The difficult issue is therefore presented whether this was such an offer of reconciliation as to excuse her continued absence. It is in the consideration of this issue that I part company with the majority.

As noted above, the lower court did not say whether it believed defendant. However, plaintiff did not deny her offer. Furthermore, plaintiff represented himself at the oral argument before this court, and during the argument he was asked by the President Judge whether in fact defendant had offered to have him live with her, in a different home. He answered that she had, adding that that had not been their agreement when they had married. This answer was consistent with the record, which shows that before the parties were married they

agreed they would live at 618 East Warren Street with Lucy.

The general rule is that the husband's choice of abode is controlling, providing it is made in good faith.[4] *Sacks v. Sacks*, 172 Pa. Superior Ct. 543, 548, 94 A. 2d 147, 149 (1953); *Sobotowich v. Sobotowich*, 165 Pa. Superior Ct. 60, 62, 67 A. 2d 637, 638 (1949); *Knapp v. Knapp*, 152 Pa. Superior Ct. 412, 33 A. 2d 88 (1943). However, "reasonable conditions may be attached to an offer of reconciliation." *Cantwell v. Cantwell*, 179 Pa. Superior Ct. 452, 455, 115 A. 2d 801, 802 (1955). "[B]ut where it is coupled with demands that indicate that the offer was not made for the sincere purpose of re-establishing amicable and affectionate relations, it may be rejected with impunity. [Collecting cases.]" *Clark v. Clark, supra* at 8, 92 A. 2d at 237 (1952).

The majority is apparently of the opinion that in insisting on a home of her own, defendant was attaching an unreasonable condition to her offer of reconciliation. In expressing this opinion the majority reasons that "[t]he record shows that at the time of the marriage, the wife knew that she would live in the home with the daughter . . . and agreed to it."

---

[4] On February 25, 1957, almost six months before the parties were married, plaintiff executed a deed of conveyance for the East Warren Street property, reserving a life estate and conveying the remainder to Lucy. On December 27, 1968, plaintiff conveyed the life estate to Lucy, giving her fee simple title. Defendant was unaware of the latter transfer, which might seem to raise the question of fraud between plaintiff and defendant, except that on cross-examination defendant said she had no interest in or expectation of inheriting an interest in the Warren Street property. However, this conveyance does bear on the issue of plaintiff's good faith in establishing the marital domicile. In my view, plaintiff's secrecy is inconsistent with the majority's conclusion that he was acting in good faith. Although the majority acknowledges the fact of the conveyance, it does not acknowledge the fact of plaintiff's secrecy.

It is true that the record does show such an agreement. However, "the time of the marriage" was over sixteen years ago, and the record does not show that defendant's agreement was that for the rest of her life, and no matter what happened, she would live with Lucy in Lucy's home. Many persons at the beginning of their marriage have assumed, and agreed, that they would live in a certain way only to find that circumstances required a change. Implicit in their original agreement is the recognition that such a change may be required.

Defendant contends she left only because of her desire to have an independent home with her husband, *i.e.*, a home apart from Lucy. I believe this contention may be well taken. She testified that "[f]rom the day that Joe and I were married there seemed to be a barrier between us and it was a barrier, I felt it, there weren't any words said, there were no quarrels whatsoever, but I felt this barrier . . . ." She claims to have tried several times to interest her husband in leaving East Warren Street,[5] but "his answer is, 'Why should I leave here and pay high rent some place' . . . ."

This case is not similar, or, more precisely, the record does not show that it is similar, to *Barnes v. Barnes,* 156 Pa. Superior Ct. 196, 40 A. 2d 108 (1944), on which the majority relies. In *Barnes,* the wife left the home her husband had made for her without reasonable cause and established a separate home of her own. Here, if defendant left only because she wanted to live with her husband and not with Lucy, she left with reasonable cause, and she should not be divorced. "Ordinarily, a

---

[5] Apparently plaintiff had an opportunity to move to Summit Grove, a home for the aged run by his church in Carlisle, Pennsylvania. Defendant claims this opportunity arose prior to November 30, 1970. Plaintiff claims they first discussed it on June 21, 1971, at the Probation Office.

wife may insist upon a separate home and need not accede to her husband's desire that they live at the home of his relatives." *Carr v. Carr*, 160 Pa. Superior Ct. 124, 127, 50 A. 2d 517, 519 (1947). Nor is it desertion for a wife to refuse to live with her husband's parents. *Commonwealth ex rel. Hrechany v. Hrechany*, 201 Pa. Superior Ct. 159, 161-62, 191 A. 2d 735, 736 (1963); *Jablonski v. Jablonski*, 188 Pa. Superior Ct. 337, 340, 146 A. 2d 813, 815 (1958). I do not understand the majority's distinction of *Hrechany* and *Jablonski*. To be sure, the parties in this case are elderly. They are nevertheless entitled to marital privacy.

I grant that there is something to be said on plaintiff's side. Plaintiff denies that defendant ever seriously spoke to him about establishing an independent home until June 21, 1971, their first post-separation encounter. (Even so, this meeting, which occurred at the Probation Office, after defendant had plaintiff arrested for non-support, was within the statutory reconciliation period.) Plaintiff also stated that his refusal to leave was because Dunmore "was my home, this was my town, that's where my friends are, that is where my work is, and this is where the rest of the Santarsieros live, and I didn't feel like going away from Dunmore." The choice of a home must be within the husband's financial means. We do not know plaintiff's means (nor defendant's, for that matter). It may be that plaintiff cannot afford to move, in which case living on East Warren Street may be a reasonable and good faith choice. We also do not know as much as we should about the effect that Lucy had on plaintiff's and defendant's relationship, nor how their family situation may have changed during the last sixteen years.

It is our duty to review the testimony and make an independent determination of whether grounds for divorce exist. *Boyer v. Boyer*, 183 Pa. Superior Ct. 260, 263, 130 A. 2d 265, 267 (1957). *And see Zimmerman*

*v. Zimmerman, supra,* at 121, 236 A. 2d at 787. Here, I do not consider that I can discharge that duty. As the record is now, a woman has been divorced for deserting her husband although she has offered to live in a home she has made for him. The lower court does not assist us by indicating how it regarded her offer; and the record is so meagre that we are left to guess about it. More information is necessary to determine whether it was in good faith or whether defendant was imposing a condition that "indicate[d] that the offer was not made for the sincere purpose of re-establishing amicable and affectionate relations . . . ." *Clark v. Clark, supra* at 8, 92 A. 2d at 237.

The granting of a divorce is a serious occasion, especially when the court is dealing with elderly people. I would insist upon an adequate record and would therefore remand for further hearing.

PRICE, J., joins in this opinion.