Zimmerman, Appellant, v. Zimmerman.

Argued December 12, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Richard A. Brown*, with him *Brown, Swope & Mac-Phail*, for appellant.

*John H. Bream*, with him *J. Francis Yake*, for appellee.

OPINION BY FLOOD, J., April 12, 1962:

In this action by Mrs. Zimmerman for divorce from bed and board upon the grounds of adultery and indignities to the person, both the master and the court found her allegations unproved and the complaint was dismissed. If there was any adultery it was condoned, and the substantial question before us is whether the plaintiff has sustained the charge of indignities. This depends upon whether the defendant's actions with reference to his secretary, the woman with whom he is alleged to have committed adultery, constituted a course of action calculated to make plaintiff's condition intolerable and her life burdensome. Under such circumstances, proof of a single act of adultery, or even more than one such act, is insufficient unless a course of improper conduct is shown. Here the evidence is insufficient to prove either adultery or a course of improper conduct such as to amount to indignities.

The evidence of defendant's improper conduct consists chiefly of two incidents. The wife says that on July 4, 1958, she came upon him with his hand inside the secretary's dress, playing with her, and her witness, Mrs. Knessel, testified that she saw him sitting on the couch beside the secretary, feeling her breasts. Mrs. Knessel did not fix the date of this incident but she says she told the plaintiff about it in February, 1959. While both incidents might well be shocking to the wife's sensibilities, the parties were fully clothed in both cases, and, as the wife herself said with regard to the incident to which she testified, it wouldn't be possible to commit adultery in the position in which she saw them.

This evidence, if believed, might be sufficient to show libidinous inclination, but there was no evidence that Mr. Zimmerman and the secretary were ever seen together except in the office or in public places. The husband's office and the apartment in which the parties lived were just across the hall from each other. He seemed to be a man whose work was the most important thing in his life. There is little evidence that he was ever away from his wife very long except when he was across the hall in his office. While both apartment and office were in a large motel, no one testified, nor was there any hint in the testimony, that the defendant and his secretary were ever seen together in a bedroom. No proof sufficient to show a course of adulterous conduct is to be found in the evidence.

The plaintiff also complains that, while she insisted on July 4, 1958, that the secretary be discharged, her husband refused to comply with her demand. However, for nine months after that date the secretary remained on the job. Mrs. Zimmerman and her husband lived together as husband and wife until the next April. During that period they went together on vacations to Hawaii and to Florida. It is hard to see from the tes-

timony that this really humiliated Mrs. Zimmerman or was otherwise an indignity to her. According to her own testimony, she continued to press the matter, but for long periods she said nothing about it. While she said that she gave him an ultimatum about it in February, before they went to Florida, she specifically stated that she did not mention it during any of the extended vacations the parties took in Hawaii and Florida between July when the incident occurred and April when she left her husband's apartment. Her husband's denial that she made any request for the discharge seems to us much more credible.

Except for the alleged failure to discharge the secretary, the only evidence of a course of conduct is her testimony that her husband told her he had committed adultery lots of times. He denied having made this statement and in view of the failure of the proof to show any adultery, it is not easy to accept the wife's testimony on this point. Moreover, as the court below points out, she testified that this statement was made several months after July 4, 1958 and therefore before February 1959. He also told her in the same conversation, she says, that he had sexual relations with the secretary. This suggests to us the same questions which it did to Judge SHEELY: "If the plaintiff had been outraged at what she saw on July 4, and had then demanded that Miss Moyers leave, and now had her worst suspicions confirmed, would she have delayed until February or later to lay down her ultimatum that Miss Moyers must leave? And if, after the July incident, the defendant was more or less on probation so far as Miss Moyers was concerned, would he have been likely to make such a confession, and in such a bragging manner?"

We agree with the master and the court below that the balance of credibility is against the plaintiff. The husband and the secretary both denied any immoral

conduct and specifically denied the two incidents testified to. He admitted some vulgarity in his conduct, but firmly denied anything more. The secretary likewise testified to a "grabbing" of her thighs as she passed, but apparently this was "a sort of policy" there. The husband specifically testified that he had never committed adultery or told his wife that he had. While Mrs. Zimmerman testified that her husband and the secretary said they were sorry and that it would not happen again, they both denied any such statements.

We agree with the court below that the real reason for the break in April was probably financial. Mr. Zimmerman refused his wife's request to lend $1,000 to their daughter and son-in-law. She became angry and later that day left her husband's apartment and did not return. She also complained that she had to ask him for money every day at that period, although she admitted that he supported her very well and her annual expenditures amounted to $39,000.

A financial dispute triggered the separation, whether or not there were other or deeper causes for the rift. Adultery was not proved. A careful reading of the testimony leaves a clear impression that, upon the failure of such proof, the evidence falls far short of the quantity and quality required to show continuous vulgarity, reproach, contumely, studied neglect, incivility, disdain, abuse, ridicule or any other manifestation of settled hate or estrangement such as is necessary to lead properly to the conclusion that the defendant has rendered the plaintiff's life burdensome or her condition intolerable: *Donlan v. Donlan*, 194 Pa. Superior Ct. 427, 169 A. 2d 121 (1961). The burden of proof in an action for divorce from bed and board on the ground of indignities is the same as that in an action for absolute divorce: *Reddick v. Reddick*, 194 Pa. Superior Ct. 257, 166 A. 2d 553 (1961).

In the *Reddick* case, Judge WRIGHT observed that, when the lower court has dismissed a complaint in an action for divorce from bed and board, this court is not readily inclined to interfere with the result: *Reddick v. Reddick*, 194 Pa. Superior Ct. 257, 260, 166 A. 2d 553, 554 (1961). Judge SHEELY, in a carefully considered and painstaking opinion, concluded that the plaintiff had not sustained her burden of proving indignities. Our independent study of the testimony leads us to the same conclusion.

The plaintiff in her statement of the question involved in this appeal, summarizes the conduct of the plaintiff upon which she relies to establish indignities. The question reads: "Did the conduct of the Defendant who, over the protests of the Plaintiff, insisted on keeping in his employment in an area contiguous to the living quarters of the Plaintiff and the Defendant, a woman towards whom he had manifested improper relations, and admitted adultery, constitute indignities to the person within the meaning of the Divorce Code of Pennsylvania?"

If the facts as to defendant's conduct were established as stated, the plaintiff might prevail. However, neither the adultery nor the husband's admission of adultery has been proved by the credible evidence. The manifestation of "improper relations" consisted of only two isolated instances of immoral conduct falling short of adultery, if the wife's witnesses are believed, and consist of nothing more than vulgarity if the husband's witnesses are credited. We find, as did the master and the court below that the balance of credibility on the controverted issues rests with the husband and his witnesses and that the plaintiff's protest of the continued employment of the secretary was not made at the time of the incident of July 4, 1958, nor at any intervening time until just before the plaintiff left, after her husband refused to lend the $1,000 to the Mapes, in April,

We are forced to conclude that the proofs do not establish conduct on the part of the defendant which constitutes indignities to the person.

Order affirmed.

CONCURRING OPINION BY WRIGHT, J.:

A realistic reading of this record impels the conclusion that the husband-appellee was guilty of improper conduct with his secretary, and that there was merit in the position of the wife-appellant that her husband should get either a new secretary or a new address. I do not dissent because of my reluctance to interfere with the determination of the lower court in a proceeding for a divorce from bed and board. Cf. *Reddick v. Reddick*, 194 Pa. Superior Ct. 257, 166 A. 2d 553. The purpose of this concurring opinion is to point out that our affirmance of the decree of the court of common pleas in the instant proceeding does not prejudice the right of the wife-appellant to institute an action for support in the court of quarter sessions. See *Commonwealth v. Scholl*, 156 Pa. Superior Ct. 136, 39 A. 2d 719.